# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARY FAY,** | **Case No.:  3:16-cv-01291-VAB** |
| **Plaintiff,** | |
| **v.** | |
| **VOYA FINANCIAL, INC.** | |
| **Defendant.** | |

## DEFENDANT'S ANSWER TO THE COMPLAINT

Defendant Voya Financial, Inc. (hereinafter "Defendant" or "VFI") hereby answers the Complaint filed by Plaintiff Mary Fay ("Plaintiff") as follows:

1.      In response to Paragraph 1 of the Complaint, Defendant admits that Plaintiff purports to bring this action under the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, (hereinafter, "Dodd-Frank"); the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, (hereinafter, "SOX"); and Connecticut's free speech anti-retaliation statute, Conn. Gen. Stat. § 31-51q, but denies any and all unlawful acts alleged.  Except as expressly admitted herein, Defendant denies the allegations in Paragraph 1 of the Complaint.

2.      In response to Paragraph 2 of the Complaint, based on information and belief, Defendant admits that Plaintiff is a natural person.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's alleged citizenship and on that basis denies the remaining allegations in Paragraph 2.

3.      In response to Paragraph 3 of the Complaint, Defendant admits that: (1) ING USA Annuity and Life Insurance Company employed Plaintiff from approximately January 3, 2012, until her termination effective November 15, 2013; (2) ING USA Annuity and Life Insurance Company was a subsidiary of ING U.S., Inc. until approximately April 7, 2014, when ING U.S.,

Inc. changed its name to Voya Financial, Inc.; (3) from April 7, 1999, until May 7, 2013, ING U.S., Inc. was an indirect, wholly owned subsidiary of ING Groep N.V., which is a company of Dutch origin; (4) from May 1, 2013, through April 7, 2014, ING U.S., Inc. was a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l and was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. §78o (d).   Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 3.

    4.      In response to Paragraph 4 of the Complaint, Defendant admits that: (1) in or about May 2013, ING U.S., Inc. was part of an initial public offering ("IPO"), (2) following the IPO, ING USA Insurance and Annuity Company changed its name to Voya Insurance and Annuity Company, and remained a subsidiary of Voya Financial, Inc., (3) Voya Financial, Inc. conducts business throughout the United States, (4) Voya Financial, Inc. became a publicly traded company in approximately May 2013, (5) Voya Financial, Inc. is a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l and is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. §78o (d).   Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 4 of the Complaint.

    5.      In response to Paragraph 5 of the Complaint, Defendant admits that Plaintiff purports to bring this case under federal law.  The remainder of Paragraph 5 states a legal conclusion to which no response is required; supplemental jurisdiction is a matter for the Court to determine.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 5 of the Complaint.

6.      Paragraph 6 states a legal conclusion to which no response is required.  To the extent a response is deemed required, and to the extent Paragraph 6 contains factual allegations, they are denied.

7.      In response to Paragraph 7 of the Complaint, Defendant admits that, by letter dated April 17, 2014, Plaintiff filed a complaint with the U.S. Department of Labor ("DOL") in which she alleged a SOX claim.

8.      In response to Paragraph 8 of the Complaint, Defendant admits that Plaintiff received written notification of her termination on or around November 1, 2013, and that, by letter dated April 17, 2014, Plaintiff filed a complaint with the DOL.  The remainder of Paragraph 8 of the Complaint states a legal conclusion to which no response is required.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 8 of the Complaint.

9.      In response to Paragraph 9 of the Complaint, Defendant admits that Plaintiff received a letter from the DOL dated January 5, 2015, dismissing Plaintiff's DOL complaint as a result of her decision to pursue her alleged claims in Federal Court.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 9 of the Complaint.

10.     In response to Paragraph 10 of the Complaint, Defendant admits that by letter dated December 29, 2014, Plaintiff requested that her DOL complaint be withdrawn and that Plaintiff's DOL complaint was pending for more than 180 days.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 10 of the Complaint.

11.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 and on that basis denies the allegations in Paragraph 11.[1]

---

[1] Defendant denies the allegations set forth in Heading V.A. of the Complaint.

12.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 and on that basis denies the allegations in Paragraph 12.

13.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 and on that basis denies the allegations in Paragraph 13.

14.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 and on that basis denies the allegations in Paragraph 14.

15.     In response to Paragraph 15 of the Complaint, Defendant admits that Plaintiff was hired for the position of Head of US Annuity Product Management, and that her proposed start date was January 3, 2012.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 15 of the Complaint.

16.     In response to Paragraph 16 of the Complaint, Defendant admits that Plaintiff's offer letter for the position of Head of US Annuity Product Management was signed by Michael Smith.  Defendant further admits that Plaintiff reported to Mr. Smith for a period of time after her hire, while Mr. Smith was in the role of Chief Executive Officer of Annuities.  Defendant denies the remaining allegations in Paragraph 16.

17.     Defendant denies the allegations set forth in Paragraph 17 of the Complaint.[2]

18.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 18, and on that basis, denies the allegations.

19.     In response to Paragraph 19 of the Complaint, Defendant admits that, when the U.S. Annuity business became part of the Retirement organization in or around August of 2012, Plaintiff, in her role as Head of Annuity Product Management, began reporting to the then-CEO of Retirement, Maliz Beams, during the search to fill the newly created position of head of the

_____

[2] Defendant denies the allegations set forth in Heading V.B. of the Complaint.

4

Annuity business.  Defendant further admits that, in approximately October 2012, based on her

role as Head of Product Management, Plaintiff became a member of the Retirement Solutions

Leaders Council, a group composed of senior managers, functional business partners and Human

Resources advisors.  Except as expressly admitted herein, Defendant denies the allegations set

forth in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations set forth in Paragraph 20 of the Complaint.

21.     In response to Paragraph 21 of the Complaint, Defendant admits that on July 13,

2012, Ms. Beams sent Plaintiff an email with the language quoted in Paragraph 21 of the

Complaint.

22.     Defendant lacks sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 22, and on that basis, denies the allegations.

23.     In response to Paragraph 23, Defendant denies that Plaintiff was offered the role

of Head of Annuities.   Defendant lacks sufficient knowledge or information to form a belief as

to the truth of the allegations in Paragraph 23, and on that basis, denies the allegations.

24.     In response to Paragraph 24 of the Complaint, Defendant denies that Ms. Beams

announced that Plaintiff would be the Head of Annuities.  Defendant lacks sufficient knowledge

or information to form a belief as to the truth of the remaining allegations in Paragraph 24, and

on that basis, denies the remaining allegations.

25.     Defendant admits that in approximately August 2012, Ms. Beams informed

Plaintiff that there would be a newly created Head of Annuities position in connection with the

transfer of the Annuities business to the Retirement organization, that the company was

conducting a search to fill the position, and that Plaintiff was welcome to apply.  Except as

expressly admitted herein, Defendant denies the allegations set forth in Paragraph 25 of the Complaint.

26.     In response to Paragraph 26 of the Complaint, Defendant admits that Plaintiff had regular professional contact with Ms. Beams and Mr. Smith in her role as Head of Product Management.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 26, and on that basis, denies the remaining allegations.

27.     In response to Paragraph 27 of the Complaint, Defendant admits that on November 13, 2012, Ms. Beams responded to an email from Plaintiff in which Plaintiff congratulated Ms. Beams on her presentation to "the bankers," and that Ms. Beams' email response contained the quoted language.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 27 of the Complaint.

28.     In response to Paragraph 28 of the Complaint, Defendant admits that on December 4, 2012, Edward Baker-Greene from the company's Human Resources department emailed Plaintiff to inform Plaintiff that she would not be selected for the Head of Annuities position, and that in his email to Plaintiff, Mr. Baker-Greene wrote that "Maliz thinks that you are doing a great job in your current role and adding value."  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 28 of the Complaint.

29.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29, and on that basis, denies the allegations.

30.     In response to Paragraph 30 of the Complaint, Defendant admits that on January 3, 2013, Ms. Beams sent Plaintiff an email that contains the quoted language in Paragraph 30.

31.     In response to Paragraph 31 of the Complaint, Defendant admits that in 2009, ING Groep submitted a restructuring plan to the European Commission to receive approval for state aid.  To receive approval for this state aid, ING Groep was required to divest its insurance and investment management businesses, including ING U.S.  ING U.S. conducted an IPO in 2013, and in connection with the IPO, ING U.S., Inc. changed its name to Voya Financial, Inc. Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 31 of the Complaint.[3]

32.     In response to Paragraph 32 of the Complaint, Defendant admits that ING Groep planned to conduct an IPO of ING U.S., and that the IPO was required to comply with applicable SEC rules and regulations.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 32 of the Complaint.

33.     Paragraph 33 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, and to the extent Paragraph 33 contains factual allegations, they are denied.

34.     Defendant denies the allegations set forth in Paragraph 34 of the Complaint.

35.     Defendant denies the allegations set forth in Paragraph 35 of the Complaint.

36.     In response to Paragraph 36 of the Complaint, Defendant admits that in January and February of 2013, Plaintiff and other Annuities employees assigned to the Lifetime Income Annuity product team were responsible for projecting profit margins for the product.  Except as

---

[3] Defendant admits that Plaintiff's team was responsible for preparing Return on Equity ("ROE") projections in connection with the development of the Lifetime Income Annuity product.  Except as expressly admitted herein, Defendant denies the allegations set forth in Heading V.C. of the Complaint.

expressly admitted herein, Defendant denies the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 37, and on that basis, denies the allegations.

38.     In response to Paragraph 38 of the Complaint, Defendant admits that Return on Equity ("ROE") is a measure of profitability, and that ING considered ROE projections, among other factors, in determining whether it would launch the Lifetime Income Annuity product. Defendant denies that ROE projections for the Lifetime Income Annuity product were released or intended to be released to the public.  Defendant further denies that ROE projections for the Lifetime Income Annuity product had or were anticipated to have any material effect on the May 2013 IPO.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 38 of the Complaint.

39.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39, and on that basis, denies the allegations.

40.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40, and on that basis, denies the allegations.

41.     Defendant admits the allegations set forth in Paragraph 41 of the Complaint.

42.     In response to Paragraph 42 of the Complaint, Defendant admits that the Actuarial Standards Board's description of the board's "standards of practice" on its website includes the language quoted in Paragraph 42 of the Complaint.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 42 of the Complaint.

43.     In response to Paragraph 43 of the Complaint, Defendant admits that David Bedard joined ING U.S. as Head of Annuities effective approximately January 28, 2013, and

became Plaintiff's immediate supervisor.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 43 of the Complaint.

44.    In response to Paragraph 44 of the Complaint, on information and belief, Defendant admits that on approximately February 15, 2013, Plaintiff participated in a call with Mr. Bedard, Mr. Smith and Ms. Beams regarding the launch of the Lifetime Income Annuity product.  Defendant lacks sufficient knowledge or information to form a belief as to the remainder of Plaintiff's allegations in Paragraph 44 and on that basis, denies the remaining allegations.

45.    Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's allegations in Paragraph 45 and on that basis, denies the allegations.

46.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 46 and on that basis, denies the allegations.

47.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 47 and on that basis, denies the allegations.

48.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 48 and on that basis, denies the allegations.

49.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 49 and on that basis, denies the allegations.

50.    In response to Paragraph 50 of the Complaint, Defendant admits that at least one version of the ROE projections for the Lifetime Income Annuity product circulated in February 2013 estimated that Annual ROE for the product in Year 1 would be 7.0%.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 50 of the Complaint.

51.    Defendant denies the allegations set forth in Paragraph 51 of the Complaint.

52.     In response to Paragraph 52 of the Complaint, Defendant admits that on February 21, 2013, Plaintiff sent Mr. Bedard, Mr. Smith and Ms. Beams, with a copy to Amy Barron, a memorandum regarding the Lifetime Income Annuity product that included a spreadsheet with ROE projections for the product over a 50-year period.  Defendant further admits that the ROE projections in the spreadsheet indicated an anticipated ROE for Year 1 of 7.0%, based on the benefits and assumptions being used for the product at that time.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 52 of the Complaint.[4]

53.     In response to Paragraph 53 of the Complaint, Defendant admits that Mr. Smith responded to Plaintiff's February 21, 2013 email transmitting the memorandum confirming that he was "generally OK" with the memorandum, and writing: "I have to say the ROE pattern (seeing for the first time) is not overly exciting given that it is pretty heavily backloaded and thus likely dependent on post-surrender lapse rates (which can vary widely from assumptions).  I don't think it changes my view on the decision, but we need to understand that, at current spreads, this product will be at best minimally ROE accretive in the forseeable [*sic*] future (excluding expense gap issues).  Weighted average ROE is not a meaningful number and should not be quoted as 'the overall ROE'.  I'd be more focused on the ROE over the first 5-10 years, which is consistently low 7's."  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 53 of the Complaint.

54.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 54 and on that basis, denies the allegations.

55.     In response to Paragraph 55 of the Complaint, Defendant admits that Mr. Bedard asked Plaintiff to make adjustments to product features, benefits, and assumptions for the

---

[4] Defendant denies the allegations set forth in Heading V.D. of the Complaint.

Lifetime Income Annuity product to see whether they could increase projected ROE for the early years by adjusting product assumptions.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

56.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 56 and on that basis, denies the allegations.

57.    In response to Paragraph 57 of the Complaint, Defendant admits that in February 2013, Plaintiff provided updated ROE projections for the Lifetime Income Annuity product that showed an estimated ROE of 8.0% for Year 1.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 57 of the Complaint.

58.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 58, and on that basis, denies the allegations.

59.    Defendant admits that Paragraph 59 includes language from the American Academy of Actuaries' Code of Conduct.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 59 of the Complaint.

60.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 60 and on that basis, denies the allegations.

61.    Paragraph 61 of the Complaint states Plaintiff's personal beliefs, to which no response is required.  To the extent a response is required, and to the extent Paragraph 61 contains factual allegations, Defendant denies the allegations in Paragraph 61 and specifically denies that the ROE projections for the Lifetime Income Annuity product violated accepted actuarial standards or GAAP.

62.    In response to Paragraph 62 of the Complaint, Defendant admits that, at approximately 3:38 p.m. on February 22, 2013, Plaintiff sent Mr. Bedard an email forwarding

updated estimated ROE projections, and that the updated projections included an 8% ROE for Year 1.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 62 of the Complaint.

63.     In response to Paragraph 63 of the Complaint, Defendant admits that Mr. Bedard sent Plaintiff an email at approximately 4:44 p.m. on February 22, 2013, asking her to call him. Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 63 and on that basis, denies the allegations.

64.     On information and belief, Defendant denies the allegations set forth in Paragraph 64 of the Complaint.

65.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 65 and on that basis, denies the allegations.

66.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 66 and on that basis, denies the allegations.

67.     In response to Paragraph 67 of the Complaint, Defendant admits that Plaintiff worked with actuaries from approximately February 22, 2013 through March 4, 2013 to make adjustments to product features and benefits for the Lifetime Income Annuity product to see whether they could increase projected ROE for the early years by adjusting product assumptions. Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 67 of the Complaint.

68.     In response to Paragraph 68 of the Complaint, Defendant admits that on February 22, 2013, Nancy Byers sent Plaintiff and other members of the product team an email in which she wrote:  "Right, I've estimated potential distribution ranges, based on the proposed charge increases (IWA decreases).  While seeming reasonable, all these numbers are still estimates and

do not necessarily reflect reality.  Regardless, if Maliz wants us to manage to an estimated 8.3%
ROE or better for the 1st year, then we will do so.  And, as always, we have IWA, guarantee
levels, and other levers to adjust." Except as expressly admitted herein, Defendant denies the
allegations set forth in Paragraph 68 of the Complaint.

69.     In response to Paragraph 69 of the Complaint, Defendant admits that Plaintiff
forwarded to Mr. Bedard Ms. Byers's February 22, 2013 email with the language quoted in
Paragraph 68.

70.     Defendant denies the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendant denies the allegations set forth in Paragraph 71 of the Complaint.

72.     Defendant lacks sufficient knowledge or information to form a belief as to the
truth of Plaintiff's allegations in Paragraph 72 and on that basis, denies the allegations.

73.     In response to Paragraph 73 of the Complaint, Defendant admits that on March 5,
2013, Mr. Bedard asked Plaintiff to include in the memorandum the revised ROE projections that
show "year 1 in that 8.2% range," along with the other revisions they had discussed.  Except as
expressly admitted herein, Defendant denies the allegations set forth in Paragraph 73 of the
Complaint.

74.     On information and belief, Defendant denies the allegations in Paragraph 74.

75.     On information and belief, Defendant denies the allegations in Paragraph 75.

76.     In response to Paragraph 76 of the Complaint, Defendant admits that on March 4,
2013, a preview of a press release to be distributed on March 5, 2013 announcing the launch of
the Lifetime Income Annuity product was circulated.  Except as expressly admitted herein,
Defendant denies the allegations set forth in Paragraph 76 of the Complaint.

77.     In response to Paragraph 77 of the Complaint, Defendant admits that on March 4, 2013, ING's Chief Financial Officer, Ewout Steenbergen, emailed Christina Hack and Mark Kaye to ask for their opinion of the product, including market risks and assumptions. Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 77 of the Complaint.

78.     Defendant denies the allegations set forth in Paragraph 78 of the Complaint.

79.     In response to Paragraph 79 of the Complaint, Defendant admits that on March 4, 2013, Christina Hack sent an email to Thomas Hanson and Plaintiff, copying Dave Bedard, in which she wrote: "Apparently our approach of not going to the OCEO didn't quite catch everyone (in fairness, I am not sure what the governance of the CFO is, unless – Thomas – is Ewout the chair of the Risk Committee?).  Anyway, can someone please provide what they think the most appropriate materials for response would be – thanks."  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 79 of the Complaint.

80.     In response to Paragraph 80 of the Complaint, Defendant admits that on March 4, 2013, Mr. Bedard emailed Ms. Hack, Mr. Hanson and Ms. Fay, writing that the Lifetime Income Annuity product had been "vetted at length" in an email that contains the language quoted in Paragraph 80.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 80 of the Complaint.

81.     In response to Paragraph 81 of the Complaint, Defendant admits that on March 5, 2013, Plaintiff wrote to Mr. Bedard as follows: "hi dave  we received approval from mike on the original design highlighted in the 2/21 memo. we then adjusted fees on low band and death benefit to improve early year irr as requested and approved by maliz.  subsequently we were asked by maliz for a hypothetical view that could result in higher early year irr for our files. i

14

think we should omit this view from the revised memo. please advise how you want to handle the revised memo that will be reviewed by ewout.  i am thinking we add a page highlighting the fee changes and impact as opposed to a wholesale rewrite but am happy to handle how you think it best. thanks. mary."  Defendant denies that Plaintiff used IRR (internal rate of return) interchangeably with ROE in discussing projections for the Lifetime Income Annuity product. Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 81 of the Complaint.

82.     In response to Paragraph 82 of the Complaint, Defendant admits that on March 5, 2013, Mr. Bedard responded to Plaintiff's email, writing: "I think we just make the couple minor tweaks we discussed on Friday of last week.  We do need the revised projection though that shows year 1 in that 8.2% range.  I don't think you need to get into the adjustments we made to the bands/death benefits etc. on that infamous Friday.  Just the minor tweaks to the memo and the updated projection should be fine.  We have gotten a bunch of inquiries from folks on the announcement. I think folks are confused with the roll up and the fact that there is no accumulation on this product other than for what drives the income amount.  Given that, if we could get the memo done today so we could get in [*sic*] the hands of a couple folks I think that would be good. Thanks Mary. We can discuss at 9 if need be.  Thanks".  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 82 of the Complaint.

83.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 83 and on that basis, denies the allegations.

84.     In response to Paragraph 84 of the Complaint, Defendant admits that Plaintiff revised the February 21, 2013 memorandum to include two revised ROE projections, with an

8.0% and 8.3% ROE estimate for Year 1, respectively.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 84 of the Complaint.

85.     In response to Paragraph 85 of the Complaint, Defendant admits that Plaintiff provided Mr. Bedard with a revised memorandum regarding the Lifetime Income Annuity product on March 5, 2013.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 85 and on that basis, denies the allegations.

86.     In response to Paragraph 86 of the Complaint, Defendant admits that Mr. Bedard edited the draft memorandum Plaintiff provided on March 5, 2013.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 86.

87.     In response to Paragraph 87 of the Complaint, Defendant admits that Mr. Bedard revised the memorandum to use the assumptions that resulted in the 8.3% ROE for Year 1.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 87 and on that basis, denies the allegations.

88.     In response to Paragraph 88 of the Complaint, Defendant denies that Plaintiff told Mr. Bedard that she was very uncomfortable with the 8.3% ROE scenario.  Defendant admits that the Lifetime Income Annuity memorandum with specific ROE projections was intended for internal use only, and that Mr. Bedard told Plaintiff to include in the final memorandum the assumptions resulting in a 8.3% ROE for Year 1.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 88 and on that basis, denies the allegations.

89.     In response to Paragraph 89 of the Complaint, Defendant admits that Mr. Bedard wanted the memorandum to reflect the date the Lifetime Income Annuity product team reviewed

the projections that appeared in the memo.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 89 of the Complaint.

90.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 90 and on that basis, denies the allegations.

91.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 91 and on that basis, denies the allegations.

92.     In response to Paragraph 92 of the Complaint, Defendant admits that Plaintiff sent Thomas Hanson an email on March 6, 2013 at approximately 8:26 a.m. containing the language quoted in Paragraph 92.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 92 of the Complaint.

93.     In response to Paragraph 93 of the Complaint, Defendant denies that the ROE calculation methodology was improper, misleading or illegal.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 93 and on that basis, denies the allegations.

94.     In response to Paragraph 94 of the Complaint, Defendant admits that on March 6, 2013, at approximately 8:47 a.m., Mr. Hanson replied to Plaintiff's email referenced in Paragraph 92, writing: "Mary, Ok to go with scenario 2 – we should ask Tom J to validate the numbers if he hasn't already – no point in letting something slip through. . ."  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 94 of the Complaint.

95.     In response to Paragraph 95 of the Complaint, Defendant admits that Plaintiff provided Mr. Bedard with a copy of the revised memorandum the morning of March 6, 2013.

Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 95 and on that basis, denies the allegations.

96.     Defendant denies the allegations set forth in Paragraph 96 of the Complaint.

97.     In response to Paragraph 97 of the Complaint, Defendant denies that the calculations for the ROE projections were a departure from appropriate actuarial methodologies. Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 97 and on that basis, denies the allegations.

98.     Defendant denies the allegations set forth in Paragraph 98 of the Complaint.

99.     In response to Paragraph 99 of the Complaint, Defendant admits that on March 6, 2013, Plaintiff sent Mr. Jaros a copy of the memorandum, at 10:37 a.m. and again at 10:43 a.m. Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 99 and on that basis, denies the allegations.

100.    Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 100 and on that basis, denies the allegations.

101.    In response to Paragraph 101 of the Complaint, Defendant admits that on March 6, 2013, Plaintiff sent an email to herself with the language quoted in Paragraph 101.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 101 and on that basis, denies the allegations.

102.    In response to Paragraph 102 of the Complaint, Defendant denies that Plaintiff objected to the ROE calculations included in the Lifetime Income Annuity product memorandum.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 102 and on that basis, denies the allegations.

18

103.     In response to Paragraph 103 of the Complaint, Defendant admits that on March 6, 2013 at approximately 11:32 a.m., Plaintiff emailed to Ms. Beams, Mr. Smith, Mr. Bedard, copying Mr. Hanson, Mr. Tope, Ms. Hack, and Mr. Kaye, a copy of the final Lifetime Income Annuity product memorandum, dated February 25, 2013 and including the assumptions and calculations that resulted in an 8.3% ROE for Year 1.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 103 of the Complaint.

104.     Defendant denies the allegations set forth in Paragraph 104 of the Complaint.[5]

105.     In response to Paragraph 105 of the Complaint, Defendant admits that on March 7, 2013, an HR Project Assistant emailed Plaintiff with a copy of her 2012 year end performance review in advance of a performance review meeting with Ms. Beams and Edward Baker-Greene previously scheduled for 4:00 p.m. that day.   Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 105 of the Complaint.

106.     Defendant denies the allegations set forth in Paragraph 106 of the Complaint.

107.     In response to Paragraph 107 of the Complaint, Defendant admits that the manager comments from Plaintiff's 2012 year end performance review contained the language quoted in Paragraph 107.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 107 of the Complaint.

108.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 108 and on that basis, denies the allegations.

109.     Defendant denies the allegations in Paragraph 109.

110.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations in Paragraph 110 and on that basis, denies the allegations.

---

[5] Defendant denies the allegations set forth in Heading V.E. of the Complaint.

111.    In response to Paragraph 111 of the Complaint, Defendant denies that Plaintiff

resisted or objected to the ROE calculations for the Lifetime Income Annuity product.

Defendant further denies that Plaintiff was instructed to manipulate ROE calculations.

Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's

remaining allegations in Paragraph 111 and on that basis, denies the allegations.

112.    In response to Paragraph 112 of the Complaint, Defendant admits that Plaintiff

started working for ING USA on approximately January 3, 2012.  Defendant lacks sufficient

knowledge or information to form a belief as to the remainder of Plaintiff's allegations in

Paragraph 112 and on that basis, denies the remaining allegations.

113.    Defendant denies the allegations set forth in Paragraph 113 of the Complaint.

114.    In response to Paragraph 114 of the Complaint, Defendant denies that Ms. Beams,

Mr. Smith or Mr. Bedard instructed Plaintiff to artificially increase the ROE on the Lifetime

Income Annuity.  Defendant further denies that it was aware of any alleged objection by Plaintiff

to Ms. Beams's, Mr. Smith's, or Mr. Bedard's views regarding ROE on the Lifetime Income

Annuity.  Defendant further denies that Plaintiff was removed from "the Crossroads project" for

any unlawful reason.  Based on information and belief, Defendant admits that Chad Tope was

the President of Annuity and Asset Sales Distribution in May 2013 and was assigned to the

Crossroads project.  Except as expressly admitted, Defendant denies the allegations set forth in

Paragraph 114 of the Complaint.

115.    Defendant denies the allegations set forth in Paragraph 115 of the Complaint.

116.    In response to Paragraph 116 of the Complaint, based on information and belief,

Defendant admits that, as of the date of Defendant's response to the Complaint, it is not aware

that Mr. Tope has engaged in any activity protected by Dodd Frank or SOX.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 116 of the Complaint.

117.    In response to Paragraph 117 of the Complaint, Defendant admits that Plaintiff was involved in the Crossroads project in 2013 to the extent it involved the Product Development team.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 117 of the Complaint.

118.    Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's allegations in Paragraph 118 and on that basis, denies the allegations.

119.    In response to Paragraph 119 of the Complaint, Defendant admits that Plaintiff's responsibilities included collaboration on interest rate setting for new products, and that the process occurred every two weeks.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 119 of the Complaint.

120.    In response to Paragraph 120 of the Complaint, Defendant admits that Plaintiff and other department heads met to discuss interest rate recommendations prior to presenting the recommendations to senior managers. Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 120 of the Complaint.

121.    Defendant denies the allegations in Paragraph 121.

122.    Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's allegations in Paragraph 122 and on that basis, denies the allegations.

123.    Defendant denies the allegations set forth in Paragraph 123 of the Complaint.

124.    Defendant denies the allegations set forth in Paragraph 124 of the Complaint.

125.    Defendant denies the allegations set forth in Paragraph 125 of the Complaint.

126.    Defendant denies the allegations set forth in Paragraph 126 of the Complaint.

127.    In response to Paragraph 127 of the Complaint, Defendant admits that in or around July 2013, the Allstate Insurance Company invited ING USA to respond to a request for proposals regarding a Fixed Indexed Annuity product ("the 2013 Allstate Insurance Company project").

128.    In response to Paragraph 128 of the Complaint, Defendant admits that Chad Tope, the head of Annuity and Asset Sales Distribution, was a part of the team responsible for the 2013 Allstate Insurance Company project.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 128 of the Complaint.

129.    In response to Paragraph 129 of the Complaint, Defendant admits that Plaintiff was involved in the 2013 Allstate Insurance Company project to the extent it involved Product Development.  Except as expressly admitted, Defendant denies the allegations set forth in Paragraph 129 of the Complaint.

130.    In response to Paragraph 130 of the Complaint, Defendant admits that some members of the team responsible for the 2013 Allstate Insurance Company project met with the Allstate Insurance Company in Chicago in September 2013, and that Plaintiff was invited to attend the September 2013 meeting in Chicago.   Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's remaining allegations in Paragraph 130 and on that basis, denies the remaining allegations.

131.    In response to Paragraph 131 of the Complaint, Defendant denies that Plaintiff was a principal participant in the 2013 Allstate Insurance Company project.  Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's remaining allegations in Paragraph 131 and on that basis, denies the remaining allegations.

132.     In response to Paragraph 132 of the Complaint, Defendant admits that Mr. Bedard resigned as Head of the U.S. Annuity business in September 2013, and that Mr. Tope was named interim head of the business but retained his title of head of Annuity and Asset Sales Distribution during the search for a replacement for Mr. Bedard.

133.     In response to Paragraph 133 of the Complaint, Defendant denies that Plaintiff was introduced as the new Head of Annuities in July 2012.   Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's remaining allegations in Paragraph 133 and on that basis, denies the allegations.

134.     Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's allegations in Paragraph 134 and on that basis, denies the allegations.

135.     In response to Paragraph 135 of the Complaint, Defendant admits that Mr. Tope was selected as interim Head of Annuities during the search for a new Head of the business. Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 135 and on that basis, denies the allegations.

136.     In response to Paragraph 136 of the Complaint, Defendant admits that the annuity business team met in Des Moines on or around October 28 or 29, 2013, and that Plaintiff was notified of her termination on November 1, 2013.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 136 of the Complaint.

137.     In response to Paragraph 137 of the Complaint, on information and belief, Defendant admits that Plaintiff attended the annuity business team meeting in Des Moines on or around October 28 or 29, 2013.

138.     In response to Paragraph 138 of the Complaint, on information and belief, Defendant admits that Mr. Tope, as the interim Head of Annuities, established the agenda for the

23

annuity business team meeting.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 138 and on that basis, denies the allegations.

139.    Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's allegations in Paragraph 139 and on that basis, denies the allegations.

140.    Defendant denies the allegations set forth in Paragraph 140 of the Complaint.[6]

141.    In response to Paragraph 141 of the Complaint, Defendant admits that Mr. Bedard interviewed Mun Kurup in the spring or early summer of 2013 for the newly-created role of Head of Annuities Finance.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 141 of the Complaint.

142.    Defendant admits the allegations in Paragraph 142 of the Complaint.

143.    In response to Paragraph 143 of the Complaint, Defendant admits that Mr. Kurup previously worked for KB Life Insurance, a joint venture with ING, in South Korea, and that Mr. Kurup returned to the United States in connection with his offer to join Retirement Solutions. Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 143 of the Complaint.

144.    In response to Paragraph 144 of the Complaint, Defendant admits that, after he joined the annuities business in July 2013, Mr. Kurup worked with Plaintiff in his role as Head of Annuities Finance.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 144 of the Complaint.

145.    Defendant denies the allegations set forth in Paragraph 145 of the Complaint.

---

[6] Defendant denies the allegations set forth in Heading V.F. of the Complaint.

146.     In response to Paragraph 146 of the Complaint, Defendant admits that Mr. Kurup worked on the Crossroads project and the 2013 Allstate Insurance Company project in his role as Head of Annuities Finance (and later, in his role as Head of Annuities Product & Strategy). Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 146 of the Complaint.

147.     In response to Paragraph 147 of the Complaint, Defendant admits that Mr. Bedard sent an email to Plaintiff with the language quoted above.  Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's remaining allegations in Paragraph 147 and on that basis, denies the allegations.

148.     Defendant denies the allegations in Paragraph 148 of the Complaint.

149.     Defendant denies the allegations set forth in Paragraph 149 of the Complaint.

150.     In response to Paragraph 150 of the Complaint, Defendant admits that Plaintiff was given notice of her termination on November 1, 2013.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 150 of the Complaint.

151.     In response to Paragraph 151 of the Complaint, Defendant admits that, effective November 2013, Plaintiff's responsibilities were consolidated with the responsibilities of the Head of Annuities Finance, and the pre-existing Head of Product Management and Head of Annuities Finance positions were eliminated.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 151 of the Complaint.

152.     In response to Paragraph 152 of the Complaint, Defendant admits that Plaintiff was provided with documents related to her termination that included an "Information Report" showing that her position and the Head of Annuity Finance position had been eliminated. Except

as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 152 of the Complaint.

153.    Defendant denies that the functions of the Head of Annuity Product Management were eliminated and otherwise denies the allegations set forth in Paragraph 153 of the Complaint.

154.    In response to Paragraph 154 of the Complaint, Defendant admits that, effective November 2013, Plaintiff's responsibilities were consolidated with the responsibilities of the Head of Annuities Finance to create a new Head of Annuities Product & Strategy position, and that Mr. Kurup was selected for the new position.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 154 of the Complaint.

155.    In response to Paragraph 155 of the Complaint, based on information and belief, Defendant admits that, as of the date of Defendant's response to the Complaint, it is not aware that Mr. Kurup has engaged in any activity protected by Dodd Frank or SOX.  Except as expressly admitted herein, Defendant denies the allegations set forth in Paragraph 155 of the Complaint.

156.    Defendant denies the allegations set forth in Paragraph 156 of the Complaint.

157.    In response to Paragraph 157 of the Complaint, Defendant incorporates by reference its responses to Paragraphs 1 through 156 above.

158.    Defendant denies the allegations set forth in Paragraph 158 of the Complaint.

159.    Defendant denies the allegations set forth in Paragraph 159 of the Complaint.

160.    Defendant denies the allegations set forth in Paragraph 160 of the Complaint.

161.    In response to Paragraph 161 of the Complaint, Defendant incorporates by reference its responses to Paragraphs 1 through 156 above.

162.    Defendant denies the allegations set forth in Paragraph 162 of the Complaint.

163.    Defendant denies the allegations set forth in Paragraph 163 of the Complaint.

164.    Defendant denies the allegations set forth in Paragraph 164 of the Complaint.

165.    Defendant denies the allegations set forth in Paragraph 165 of the Complaint.

166.    In response to Paragraph 166 of the Complaint, Defendant incorporates by reference its responses to Paragraphs 1 through 156 above.

167.    In response to Paragraph 167 of the Complaint, Defendant admits that its subsidiary employed Plaintiff from January 3, 2012 to November 15, 2013.  The remainder of Paragraph 167 states a legal conclusion to which no response is required.

168.    Defendant denies the allegations set forth in Paragraph 168 of the Complaint.

169.    Defendant denies the allegations set forth in Paragraph 169 of the Complaint.

170.    Defendant denies the allegations set forth in Paragraph 170 of the Complaint.

* * *

In response to Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to a jury trial on some or all of her claims, and further denies that Plaintiff is entitled to the requested relief or to any requested relief.

## DEFENDANT'S DEFENSES

Without admitting any facts alleged by Plaintiff, Defendant pleads the following separate defenses to the Complaint:

(1)    The Complaint, and each of its causes of action, fails to allege facts sufficient to constitute a cause of action.

(2)    Plaintiff's claims are barred because she did not engage in protected activity.

27

(3)     Plaintiff's claims are barred to the extent that the facts Plaintiff alleges do not rise to the level of actionable adverse actions.

(4)     Plaintiff's claims are barred, in whole or in part, because she cannot demonstrate a causal connection between any alleged protected activity and any alleged adverse action, and Defendant can demonstrate by clear and convincing evidence that it would have taken any alleged adverse action against Plaintiff in the absence of any alleged protected activity.

(5)     Plaintiff's claims are barred because Defendant had legitimate, non-discriminatory and non-retaliatory business reasons for any alleged adverse action against Plaintiff.

(6)     Plaintiff's claims are barred, in whole or in part, because Defendant had an honest, good-faith belief that all decisions with respect to Plaintiff's employment were made solely for legitimate, business-related reasons and were reasonably based upon the facts as Defendant understood them.

(7)     Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, estoppel, release, and/or unclean hands.

(8)     Plaintiff's claims are barred, in whole or in part, to the extent that they are asserted beyond the applicable statutes of limitations or other limitations periods.  Defendant pleads all applicable limitations periods, both as bars and limitations to the claims and requests for relief asserted in the Complaint and as limitations upon the evidence to be admitted or considered in connection with any proceeding in the case.

(9)     Plaintiff's claims are barred, in whole or in part, to the extent that she failed to exhaust her administrative remedies or to the extent that her Complaint concerns matters that were not reasonably within the scope of her administrative charge.

(10)    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to satisfy all the conditions precedent to filing suit under SOX or Dodd-Frank.

(11)    Plaintiff's claims are barred, in whole or in part, by the doctrine of avoidable consequences.

(12)    Plaintiff is estopped from pursuing her claims by reason of her own actions and conduct to the extent she failed to complain about alleged retaliation.

(13)    Plaintiff's claims under the Connecticut Free Speech statute are barred in whole or in part because Plaintiff did not act toward the public concern.

(14)    Plaintiff's claims are barred because any recovery from Defendant would result in Plaintiff's unjust enrichment.

(15)    Plaintiff has failed to mitigate or make reasonable efforts to mitigate her alleged damages, and Plaintiff's recovery of damages, if any, must be barred or reduced accordingly.

(16)    Plaintiff's claims for damages (and certain categories of damages, and the amounts thereof recoverable) are limited/ capped by all applicable federal and/or state statutes.

(17)    Plaintiff's claims for injunctive or equitable relief are barred because Plaintiff has an adequate and complete remedy at law.

(18)    Plaintiff is not entitled to recover any punitive or exemplary damages and any such allegations should be stricken because Plaintiff has failed to plead facts sufficient to support allegations of willful, malicious, or reckless behavior.

(19)    Plaintiff is not entitled to recover any punitive damages to the extent any such damages would violate Defendant's constitutional rights under provisions of the United States and/or Connecticut Constitutions.

(20)     Plaintiff's claims for damages are barred to the extent that said claims are speculative in nature.

(21)     Plaintiff has alleged no facts sufficient to support an award of compensatory damages, liquidated damages, punitive damages, damages for any physical or emotional injury, front pay, reinstatement, costs, attorneys' fees, or any other relief.

(22)     Plaintiff is barred from recovering punitive damages because Defendant had in place a policy to prevent retaliation in its workplace and made good-faith efforts to implement and enforce that policy.

(23)     Defendant may have further separate and/or additional affirmative defenses which are not yet known, but which may become known through further discovery.  Defendant hereby asserts each and every such affirmative defense as it may be ascertained through future discovery, and reserves the right to amend this Answer to raise any such additional defenses not known at this time but which may become known during the course of discovery, investigation or trial.

WHEREFORE, Defendant prays that Plaintiff's claims be dismissed in their entirety, that judgment be entered in its favor and against Plaintiff, and that Defendant be awarded its costs, including attorneys' fees and expert fees, and expenses to the extent permissible by law, and such further relief as this Court deems just and appropriate.

Dated: September 30, 2016                    Respectfully submitted,


__/s/ Barbara B. Brown_____
By: Barbara Berish Brown
Regan A. W. Herald (pro hac vice
application submitted)
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC  20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
barbarabrown@paulhastings.com
reganherald@paulhastings.com

Andrew D. O'Toole
O'TOOLE + O'TOOLE PLLC
280 Trumbull St., 15th Floor
Hartford, Connecticut 06103
Telephone:  (860) 519-5805
Facsimile:  (860) 519-5813
aotoole@otoolegroup.com

Attorneys for Defendant
Voya Financial, Inc.

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**MARY FAY,**                                          **Case No.:  3:16-cv-01291-VAB**

          **Plaintiff,**

**v.**

**VOYA FINANCIAL, INC.**

          **Defendant.**

## CERTIFICATION OF SERVICE

I hereby certify that on September 30, 2016, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          /s/ Barbara B. Brown      
          Barbara B. Brown
          PAUL HASTINGS LLP
          875 15th Street, NW
          Washington, DC  20005
          Telephone: (202) 551-1700
          Facsimile: (202) 551-1705
          barbarabrown@paulhastings.com

          Attorney for Defendant
          Voya Financial, Inc.